IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PERSTEPHANIE L. PARKER,        )
                               )
    Plaintiff,             )
                               )
  -vs-                         )        Civil Action No. 15-642
                               )
CAROLYN W. COLVIN,             )
COMMISSIONER OF SOCIAL SECURITY, )
                               )
    Defendant.             )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Perstephanie L. Parker ("Parker") appeals an ALJ's denial of her claim for supplemental security income ("SSI"). Parker alleges a disability beginning December 21, 2011. (R. 36-37) Parker contends that she is disabled due to a number of impairments including bipolar disorder, schizophrenia and depression. Following a hearing and consultation with a vocational expert, the ALJ denied her claim, concluding that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with some nonexertional restrictions. (R. 16-29) Parker appealed. Pending are Cross Motions for Summary Judgment. *See* ECF Docket Nos. [11] and [13]. After careful consideration and for the reasons set forth below, this case is affirmed.

### Legal Analysis

1

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

2. The "Waxing and Waning" of Psychological Symptoms

Parker contends that the ALJ placed "undue emphasis" on the examinations during which her psychiatric impairments were milder and "ignored" the fact that there were times during which she did not function at a high level. *See ECF Docket No.* [12], p. 12-16. Parker cites to several instances that evidence her extreme complaints of poor sleep, poor appetite, irritability, stress, hallucinations, suicidal thoughts and a hospitalization. *See ECF Docket No.* [12], p. 14-15 Yet she simply does what she has accused the ALJ of – isolating specific instances in the record to support her argument. After careful consideration, I reject Parker's contentions.

Certainly an ALJ must consider the claimant's longitudinal history. "Such history is important in the mental health context, as symptoms wax and wane over time." *Epps v. Colvin*, Civ. No. 13-938, 2014 WL 807957 (W.D. Pa. Feb. 28, 2014), *citing, Jaleh Kaveh Ahangari v. Astrue*, Civ. No. 7-1869, 2008 U.S.Dist. LEXIS 68018 at *812-13 (D. Colo. Sept. 8, 2008). A claimant who suffers from disabling impairments can show temporary improvement in conditions. *See Barker v. Colvin*, Civ. No. 14-15E, 2014 WL 4384347 at *4 (W.D. Pa. Sept. 3, 2014) (recognizing that there can be a "waxing and waning of mental illness symptoms" and stating that "[j]ust because someone improves at times does not necessarily mean that there are inconsistencies or that Plaintiff's work related abilities / limitations improved or are adequate. It very well could mean that in her improved state, Plaintiff still had serious limitations preventing Plaintiff from working on a sustained basis.") Indeed "'[m]any mental illnesses are characterized by 'good days and bad days,' … or recurrent cycles of waxing and waning symptoms.'" *Ehredt v. Comm'r. of Soc. Sec.*, Civ. No. 14-23, 2014 WL 438614 at *2, n. 2 (W.D. Pa. Sept. 4, 2014), *quoting, Phillips v. Astrue*, 413 Fed. Appx. 878, 886 (7th Cir. 2010). "This may

3

mitigate the value of isolated treatment notes, or a 'snapshot,' regarding a claimant's mental condition." *Ehredt*, 2014 WL 438624 at * 2, n. 2, *citing*, *Real v. Astrue*, 2012 U.S. Dist. LEXIS 180265, 2012 WL 6642390 (N.D. Ill. Dec. 18, 2012).

However, a review of the record reveals that the ALJ did consider Parker's longitudinal history. First, the ALJ does acknowledge that the records contain evidence of Parker reporting "voices in her head," stress, hospitalization, suicidal ideation, and sleep and appetite disturbances. (R. 22-25) Moreover, she discusses Parker's reports of increased symptomology, her auditory hallucinations, her paranoia and the difficulty she experienced in getting along with others. (R. 24-28) Consequently, the ALJ did not "ignore" Parker's complaints or evidence of the same.

Second, the record contains substantial evidence supporting the ALJ's conclusion that Parker's longitudinal history indicates that she is able to perform a full range of work with some limitations. For instance, as the ALJ noted, Parker's mental examinations repeatedly revealed her to be polite, with "calm and cooperative behavior," to have logical thought processes, to have intact concentration and memory, to have good to fair insight and to be goal oriented. (R. 25) (R. 348-353, 354, 356, 358, 359) Further, as the ALJ observed, Parker was repeatedly noted to be alert, oriented and cooperative during examinations. (R. 22, 368, 374, 382, 387, 405, 410, 417, 426) Moreover, the state agency psychological assessments of both Dr. Rings and Dr. Banks support the ALJ's view of Parker's longitudinal history. Rings opined that Parker "could make simple decisions, carry out very short and simple instructions, sustain a work routine without special supervision, ask simple questions, accept instruction and function in production oriented jobs requiring little independent decision making." (R. 27,

4

citing Exhibit 2A). Similarly, Banks explained that Parker could "understand, remember and carry out simple, 1 and 2 step instructions, perform routine and repetitive work in a stable environment, work within a schedule without special supervision, adapt to routine changes and function in production oriented jobs requiring little independent decision making." (R. 27, citing Exhibit 4A). Consequently, I find that the ALJ did not err in assessing the impact of Parker's psychiatric impairments on her ability to work.

    3.  <u>The ALJ's Reliance Upon the State Agency Physician Opinions</u>

Parker also urges that the ALJ erred in relying upon the opinions offered by Valerie Rings and Sandra Banks referenced above, contending that such opinions are not consistent with the evidence of record. More specifically, Parker contends that the state agency opinions are deficient because they were authored before Parker was fired from multiple jobs and before multiple exacerbations of her symptoms. *See ECF Docket No.* [12], p. 17-18. Again, Parker's contention is unconvincing. The mere fact that those opinions predated some of the evidence in this case does not render the ALJ's reliance upon those opinions suspect. In *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011), the Third Circuit Court of Appeals recognized that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Indeed, "[t]he Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* … may change the State agency medical … consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required." *Chandler*, 667 F.3d at 361, *quoting*, SSR 96-6p (July 2, 1996)

5

(emphasis added). Here, as in *Chandler*, the ALJ did not find that additional evidence received after the state agency medical consultants issued their opinions would change those opinions. Further, as set forth above, the opinions rendered by Banks and Rings are consistent with other substantial evidence of record.[1]

Parker also urges that the ALJ failed to account for all of the limitations that Dr. Banks and Dr. Rings indicated. I disagree. According to Parker, the state agency psychiatrists found that she was moderately limited in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, as well as the ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods." *See ECF Docket No.* [12], p. 18 Specifically, Dr. Rings found Parker to be "moderately limited" in these respects, and Dr. Banks found Parker to be "moderately limited" only insofar as her ability to complete a "normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 83).[2] According to Parker, "[t]he ALJ does not discuss these limitations in her decision in evaluating the state agency psychiatrist's report." *See ECF Docket No.* [12], p. 18. First, the ALJ does, in fact, discuss the fact that each physician found Parker to be

---

[1] Parker also urges that this Court should adopt the doctrine that the ALJ should at least solicit an opinion from a claimant's treating physician. *See ECF Docket No.* [12], p. 18. Parker cites to *Toland v. Colvin*, Civ. No. 12-1663, 2013 6175817 (W.D. Pa. Nov. 25, 2013) and *Tankisi v. Comm'r. of Soc. Security*, 521 Fed. Appx. 29, 33 (2d Cir. 2013). I note that in those cases, the courts found that although 20 C.F.R. § 416.913(b)(6) "'seems to impose on the ALJ a duty to solicit'" medical opinions from a claimant's treating sources, the courts nevertheless held that "'remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity.'" *Toland*, 2013 WL 6175817 at * 10, *quoting, Tankisi*, 521 Fed. Appx. 29, 33 (2d Cir. 2013). Here, the record contained sufficient evidence from which the ALJ was able to assess Parker's residual functional capacity.
[2] Dr. Banks found Parker was "not significantly limited" with respect to the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (R. 83)

6

moderately limited in certain of these respects. (R. 27) More significantly, however, the ALJ detailed the physicians' narrative statements which gave explanation to those findings. (R. 27) On each assessment the physician is asked to "explain in narrative form the sustained concentration and persistence limitations indicated above." (R. 73, 83). Dr. Rings explained, "[c]laimant can make simple decisions. The claimant is able to carry out very short and simple instructions. The claimant would not require special supervision in order to sustain a work routine." (R. 73) Similarly, Dr. Banks explained, "[t]he claimant is able to carry out very short and simple instructions. She is capable of working within a work schedule. The claimant would not require special supervision in order to sustain a work routine." (R. 83) The narrative explanations encapsulate and translate the limitations the physicians found Parker to be under and the ALJ was entitled to rely upon the narrative explanations. *See Smith v. Comm'r. of Soc. Sec.*, 631 F.3d 632, 636-637 (3d Cir. 2010); *Baker v. Comm'r. of Soc. Sec.,* Civ. No. 12-212, 2014 WL 1317300 at * n.1 (W.D. Pa. March 31, 2014).

4. Parker's Illiteracy

Finally, Parker contends that the ALJ failed to properly evaluate her illiteracy. According to Parker, the testimony calls into question whether she is a functional illiterate and the record requires further development on this issue. Parker seeks a remand, urging that the ALJ concluded that she had a "limited education," but provided no meaningful analysis as to how she arrived at this conclusion.[3]

---

[3]The term "limited education" means " ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th through the 11th grade level of formal education is a limited education." *20 C.F.R.416.964*.

I disagree. The record contains substantial evidence supporting the ALJ's findings regarding Parker's alleged illiteracy. During the hearing the ALJ engaged in a lengthy conversation with Parker and established that Parker completed the 8th grade, that she can read and write "a little bit," and that she had past job experience as a cashier at McDonald's and Taco Bell. (R. 40-42) The regulations provide that "if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities." *20 C.F.R. § 416.964(b)* Parker has not established that the evidence of record is inconsistent with the ALJ's finding that she has an eighth grade education. Further, the regulations allow for the term "education" to include how well a claimant is able to communicate in English, "since this ability is often acquired or improved by education." *Id.* Here, the ALJ had the opportunity to evaluate Parker's ability to communicate in English. Additionally, "past work experience" is relevant to the understanding of education. *Id., at § 416.964(a)* Here, the ALJ noted that Parker had past work experience as a cashier. Finally, I find that the ALJ accounted for any reading and writing impairments Parker has in the residual functional capacity assessment ("RFC") by limiting the type of unskilled, entry level work that she can perform. (R. 24)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PERSTEPHANIE PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Civil Action No. 15-642 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 6th day of October, 2016, it is hereby ORDERED that the decision of the ALJ is affirmed and that Plaintiff's Motion for Summary Judgment (Docket No. 11) is denied and Defendant's Motion for Summary Judgment (Docket No. 13) is granted.

                                         BY THE COURT:

                                         /s/ Donetta W. Ambrose
                                         Donetta W. Ambrose
                                         United States Senior District Judge